UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                          :
IN RE                                     :          MDL No. 1409
                                          :          M 21-95
CURRENCY CONVERSION FEE
ANTITRUST LITIGATION                      :          ORDER

- - - - - - - - - - - - - - - - - - - - - - - - - - -x
THIS DOCUMENT RELATES TO:                 :

ALL CASES                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - -x

WILLIAM H. PAULEY III, District Judge:

   This Court received objections to the proposed settlement in this action from the

following class members: Vincent L. Andella, Jr., Cliff Bamford, William B. Barrington, J.

Andrew Downey, Jason B. Grosskopf, Ursula Ganz, Warren E. Halverson, Daniel M. McClure,

Geoff Palmer, Patricia L. Rath, Francis L. Rost, Ann Ruckstuhl, Jane B. Selfe, Edward M. Selfe,

James Wilson, Mark Schulte, and William Zorn.  These objections do not appear on the docket

sheet for this action.  Copies, with account information redacted, are attached to this Order.

Dated:  March 4, 2008
   New York, New York

        SO ORDERED:


        ———————————————————
         WILLIAM H. PAULEY III
           U.S.D.J.


*Copies to:*
All Counsel of Record

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                FE3 1 5 200

--------------------------------------------------x
IN RE CURRENCY CONVERSION FEE            MDL No. 1409
ANTITRUST LITIGATION
--------------------------------------------------x
THIS DOCUMENT RELATES TO:
ALL ACTIONS
--------------------------------------------------x

## OBJECTION TO PROPOSED SETTLEMENT

Now comes class member, Vincent L. Andella, Jr. ("Andella") a Florida resident

and files this objection on behalf of himself and all class members to the proposed

Stipulation and Agreement of Settlement ("Settlement").  Andella has received a direct

notice of the Settlement, has traveled overseas and made a foreign transaction during the

period February 1, 1996 and the date of Preliminary Approval, and has a valid claim for

damages.

## ARGUMENT

### I.    Proposed Settlement is Unfair, Inadequate and Unreasonable

A court should preliminarily approve a settlement if the court makes two related

determinations: first, that no basis exists to question the fairness of the settlement,

because it "is not the product of collusion between the parties," *See Thomas v. Albright*,

139 F.3d 227, 231 (D.C. Cir. 1998) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th

Cir. 1997)); *See also In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474

(S.D.N.Y. 1998) (settlement should be the "result of good faith arm's length bargaining

undertaken by experienced counsel") and second, that the proposed settlement appears to

fall within the range of possible approval, *i.e.*, that the settlement appears to be one that

can be found, after a full and fair hearing, to be fair, adequate, and reasonable. *See Thomas v. Albright*, 139 F.3d at 231; *see also, e.g., White v. National Football League*, 836 F. Supp. at 1468 (noting that the court found, for purposes of preliminary approval, that the settlement fell within the range of possible approval).

It is also a fundamental requirement that to bind any party to the provisions of a class action settlement, the purported class member must be a party to the suit and have had interests adequately represented. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) (stating that in order to bind absent class members, the class representative must be part of the same class, possess the same interests, and suffer the same injury as those sought to be bound). There has not been any showing that Andella's interests, or the interests of any other class members have been adequately represented here when no rhyme or reason is presented for the settlement amount. Based upon the evidence currently before the Court, the proposed settlement is unfair, inadequate and unreasonable. The liability case against the Defendants is strong based upon Plaintiffs' own pleadings. Damages at issue are well into the billions. Balanced against the class-wide relief – this settlement is grossly inadequate.

The parties have failed to provide the Court or class members with any support as to the settlement amount or its proportionality to the varied class members, some of whom have different claims. As such, the Settlement is unfair and should be rejected.

## II.    Inadequacy of Lead Counsel

William S. Lerach, senior partner of the law firm Lerach, Coughlin, Stoia, Geller Rudman & Robbins, which at all material times has been Lead Counsel for the Class, was sentenced this week to two years in prison and ordered to forfeit $7.75 million for

2

concealing illegal payments to a plaintiff in certain of the firm's class-action lawsuits. Such a sentencing casts a shadow over the firm's adequacy to serve as lead counsel. In addition, the organization of plaintiffs' counsel as managed by Lead Counsel excluded plaintiffs and presumably attorneys from participating in the litigation, which would have resulted in a greater recovery.

## CONCLUSION

In light of the foregoing, Vincent L. Andella, Jr. respectfully requests this Court reject Final Approval of the Settlement as unreasonable, unfair and inadequate.

Respectfully submitted,

Dated: February 13, 2008

Vincent L. Andella, Jr.
P.O. Box 11654
Naples, Florida, 34101

## <u>CERTIFICATE OF SERVICE</u>

On the 13th day of February, 2008, a true copy of the above mentioned document was duly served by overnight mail upon the following:

Bonny Sweeney
Coughlin, Stoia, Geller, Rudman & Robbins
655 West Broadway, Suite 1900
San Diego, CA 92101

Merrill G. Davidoff
Berger & Montague, PC
1622 Locust Street
Philadelphia, PA 19103

U.S. District Court Southern District of New York
500 Pearl Street
New York, NY 10007-1581

Vincent L. Andella, Jr.

**Cliff Bamford**
70 East Sunset Way
Issaquah, Washington 98027

February 7, 2008                    FEB 1 3 2008

Clerk of the Court
United States Courthouse
500 Pearl Street
New York, NY 10007-1581

Re: Currency Conversion Fee Antitrust Litigation, MDL No. 1409 **(SECOND LETTER)**

This is a continuance of my objection to this Settlement, as originally set forth in my letter to the Court of January 11, 2008. In particular I object to the amount of the attorney's fees awarded.

In apparent response to my first letter, I received a 16-pound box of papers defending the size of the current awards. Those arguments are not very convincing. In too many respects, counsel's 16-pound argument lacks falsifiability[1], the gold standard of compelling argument.

The Settlement Class deserves the strongest possible assurances that the fee award is fair. So I searched for legal arguments which relied less on postulation, and which complied more with the highest standards of argument validity. Here's what I found:

*Cornell Legal Studies Research Paper No. 04-01, the NYU Center for Law and Business Research Paper No. 03-23;* and *The Journal of Empirical Legal Studies March 2004,* all publish *Attorney Fees in Class Action Settlements: An Empirical Study,* by Theodore Eisenberg, the Henry Allen Mark Professor of Law at Cornell, and Geoffrey P. Miller, the Comfort Professor of Law at NYU. The study is available at many websites; for the Court's convenience I have attached a copy.

The Eisenberg and Miller study analyses more than 600 common fund cases available in *Class Action Reports, March-April 2003 edition,* plus "all state and federal class actions with reported fee decisions between 1993 and 2002, inclusive, in which the fee and class recovery could be determined with reasonable confidence".

In this respect, the Eisenberg and Miller study (hereafter called E&M) vastly extends the list of 20 cases provided on pages 10 through 12 of co-Lead Counsel's memorandum in support of their request for fee awards (hereafter called CoLeadMemo).

The E&M study uses standard statistical methods to demonstrate that "declining percentages" are not limited to "some courts" as claimed in CoLeadMemo, but rather form a consistent pattern across all class actions in all courts: *award percentages decline with magnitude of settlement, across the board.*

The magnitude and consistency of that decline can be seen in this chart, drawn directly from the data on page 73 of E&M:



The right hand side shows that cases with settlements ranging from $190 million to $270 million (the largest settlements in the 2002 database) had average awards of 12%. To be consistent, the current $338 million settlement would require an award in the 12% range.

From another perspective, in order to justify a 25.5% fee, the settlement in the current case would need to be down around $5 or $10 million.

The chart is a simplification in the interests of clarity, but it accurately reflects the conclusions and intent of E&M, and (in the author's opinion) is the simplest representation that faithfully renders the E&M work. In other words, there is no statistical hocus pocus in either the chart or the E&M work on which it is based. The decline of award percentages with increasing settlement amounts is a reality.

It real because it is the natural result of a universally understood driver: economy of scale. As similar cases are aggregated, the efficiency gains yield an increased net return to clients. Indeed, economy of scale is the bedrock of all class action litigation. It is certainly no surprise that it shows up in fee award percentages, since fees are proportional to attorney effort, and effort is exactly what increasing scale economizes.

In summary, the E&M study proves that the fee award of 25.5% in this case lies egregiously and significantly above the norm for class action settlements of this magnitude. In order to conform to the largest and best available corpus of comparable class action cases, **the fee awarded in this case should not be larger than 15%**[2].

Even if the Court decided to approve an award at a full standard deviation above the mean of all E&M cases with settlements above $190 million, the award should still be below 20% (this is explained on page 75 of the study).

Co-Lead Counsels argue, on page 12 of their memorandum, that declining percentages are a bad idea. They argue that adoption of declining percentages would lead to attorneys settling cases too early and too cheaply. This argument is disingenuous. Declining awards as a percentage of settlement are a fact. They have not led to over-early or too-small settlements. The very case at hand is a counterexample to counsel's argument.

Counsel may attempt to dismiss E&M on the grounds that it is overbroad. This is also incorrect. Page 51 of E&M separates antitrust class actions from the other categories. The regression analyses on pages 52 through 55 reveal that although securities and fee-shifting cases deviate slightly from the correlation models, antitrust cases in general and this case in particular, do not create a category of their own. The E&M study provides clear statistical justification for including antitrust mega-settlements in its conclusions. The burden of disproving those statistics is Counsels' and the current fee should not be allowed to stand unless such disproof is produced (and verified by qualified statisticians).

Counsel may argue that other factors such as litigation complexity, lodestar crosschecks, etc somehow mean that the E&M study should not apply to MDL 1409. Those arguments are also fallacious. Firstly, E&M takes pains to address and factor into its conclusions most if not all of the arguments in CoLeadMemo. Litigation risk, case complexity, counsel qualifications, Lodestar and Multiplier, and many other factors are all addressed in E&M. It strains credulity (and mathematical reasoning) to imagine that counsel could construct a valid argument supporting an increase of more than a standard deviation from the award percentages recommended in E&M. To be sure, this case has its unique aspects, as does every case. But no aspect is so groundbreaking as to justify such a large excursion from the norm. The settlement size in this case may break some current records, but the records won't stay broken, and the current case will inexorably move closer to the norm. Barring freak improbabilities, it cannot go anywhere else.

On page 32, the CoLeadMemo has a little fun with words, claiming "there is nothing average about this case". But counsel's memo is filled with appeals to averages and norms, in its arguments about lodestar and multipliers values, to name just a couple of instances. In fact, it can be said that *no* case is completely average, since all cases have their distinguishing elements. But all countable things, all cases certainly, are subject to the law of averages[3], just as all physical things are subject to the laws of thermodynamics, puns to the contrary notwithstanding.

Counsel may also argue that the E&M study, since it is based on an inventory of cases covering the decade 1993 to 2002 inclusive, is outdated. This argument is falsified by the E&M study itself, which shows, on pages 55 through 57 that fee awards as a percentage of settlement size have remained quite constant over the decade covered by the report. The burden of proof lies with counsel if they are going to claim that this decade-long pattern has changed since 2003.

On page 32, the CoLeadMemo argues that "simply relying on" a "single study" violates the principle that courts are urged to examine the circumstances of each case.

That is simply a non-sequitor. Relying on a single study or two is in no way inconsistent with examining the circumstances of the case at hand. Exclusively relying of one study certainly would be a problem, but surely nobody is suggesting that this Court is committing that error. Perhaps counsel is suggesting that the cited work ("The Logan Study") is an irrelevant aberration? Its conclusions are consistent with E&M, which is most assuredly not.

Furthermore, the E&M study extensively examines, summarizes and to a greater or lesser degree incorporates the results of a half dozen other studies and the large number of class actions on which they are based.

Furthermore, certain "single studies" are so apt, and so well constructed, as to provide direct and pivotal insights to the Court as it endeavors to insure the fairness of fee awards. The E&M report is certainly this apt. It is surely among those few best studies that cast the most light on the issue at hand. The court systems' historical inability to utilize empirical research is due to the relative paucity of available information. To dismiss the E&M study, which corrects the paucity, and which makes exactly the right empirical evidence available in exactly the right context, is unthinkable.

There is one other Co-Lead Counsel argument in that is breathtaking in its presumption. On page 5, CoLeadMemo claims that the Settlement Class overwhelmingly agrees with the fee award, because only 25 objections were received after 38 million notices were sent. Absence of evidence is not evidence of absence (of disapproval, in this case).

As one of the 25 people who have filed an objection, I assure the Court that:

- I get several solicitations to participate in class actions every year

- I find most of them repugnant in light of the disparities between attorney awards and typical class members' compensation

- This is the first solicitation which has moved me to object

- I almost tossed this one into the garbage with all the others

- Had I done so, it would not have been because I agreed with the fee award — quite exactly the opposite.

I suggest that the most popular form of objection involves the nearest trashcan, and that no hay should be made from the fact that few people took the trouble to write to the Court.

For example, this is the best objection I can construct. I certainly think it should influence the fee award. But I will not be very surprised if my objection is negated by some legal maneuver that has little to do with the validity of my arguments, or with plain justice.

In light of all this, it is no surprise that so few people have the heart or means to object.

## Conclusion

Paraphrasing the Eisenberg and Miller study:

> *The Court must ultimately determine the amount of fees paid to class counsel. The fees will be paid by the defendant, which has no ability to control the reasonableness of class counsel's fee demands.*

> *Without judicial supervision, counsel could make entirely unreasonable fee requests. **Indeed, counsel's request for compensation creates a direct conflict of interest with the class.***

> *Because class members are dispersed, disorganized, and typically have a relatively small stake in the outcome of the litigation, the class cannot protect itself against an unreasonable fee request. Again, court protection is required to prevent counsel from enriching themselves at the expense of the class.*

Until now, courts have had little empirical evidence on which to base their award decisions. The Eisenberg and Miller study provides that evidence, and the statistical analyses that render it directly applicable to the case at hand. Those analyses suggest that the fee award in this case should be around 15% -- certainly no greater than 20%.

I ask the Court to read the E&M study and to apply its conclusions to MDL 1409. Eisenberg and Miller have provided a gold standard against which the fairness of class action fee awards may be measured. Clarity and reliability in judicial decision-making tools are rare. I respectfully urge the Court to avail itself of this rare opportunity by applying E&M to justify a reduction of the fee award in this case to 15 percent.

Signed

Cliff Bamford

Cc: Berger & Montague, P.C, and Coughlin Stoia, Geller, Rudman & Robbins, LLP

**Endnotes**

---

[1] (referring to page 1, para 2)

A falsifiable argument is one for which there is an independent way of testing its conclusions in light of undisputed facts.

As I am sure the Court is aware, falsifiability is the cornerstone of the scientific method, the gold standard against which arguments are measured. On this scale, counsel's arguments don't score well -- not surprisingly, since they go forth under the legal regime of adversarial reasoning as opposed to scientific method.

The E&M study referred to in this letter *is* falsifiable; its methods are scientific and statistical, and open to rigorous evaluation by any settlement class member. Put another way: The E&M study is correct and convincing, and you don't have to take my word for it.

[2] (referring to page 2, final para)

15% rather than 12% because the E&M study normalizes to inflation-adjusted 2002 dollars. This introduces a small uncertainty due to differing values for inflation rates over that period. I have given counsel the benefit of this doubt.

[3] (referring to page 3, para 4)

There is confusion as to the meaning of this phrase. Mathematicians take "the law of averages" to be synonymous with the Law of Large Numbers, a. k. a. Bernoulli's theorem, as explained at http://mathworld.wolfram.com/WeakLawofLargeNumbers.html

FE3 1 5 2008

# WILLIAM B. BARRINGTON

1506 Keel Drive
Corona Del Mar, CA 92625
Phone (949) 760-6628   Fax (949) 644-0452 Mobile (949) 533-3002 email barrington1assoc@cox.net

February 10, 2008

U.S. District Court for the Southern District of New York
500 Pearl Street
New York, NY. 10007- 1581

Subject: Visa, MasterCard, and Diners Club Cardholders Class Action Settlement

Dear Sirs,

I object to the settlement for the following reasons:

1.  Prior to 1996, when we traveled out of the country we had to make arrangements to obtain foreign currency for the countries we planned to travel to, or we could go to a foreign bank and exchange U.S. dollars for the local currency. This cost was over 3% as I recall.
2.  Then, with the advent of the Automatic Teller Machines, we were able to obtain local currency by going to any foreign bank. The fees we paid were considerably lower than purchasing foreign money. Having access to these foreign ATMs was more convenient, and it cost the consumer less.
3.  Now, you are objecting to the credit card companies from charging the consumer a fee for exchanging our money, even if they're saving us, the consumer, money.

Now, we have three choices to use to obtain a part of the proposed settlement. Unfortunately, I and probably thousands of others, have destroyed their records prior to 2001. Plus, it took me over 2 hours to go through my records and add my charges on just the 2005 & 2006 years.

I believe this settlement is unjust, and the only groups that wins are the plaintiff and defendant attorneys. And most importantly, if the Settlement is approved, the defendants will have to charge the consumers more in the future to recover this expense. Who is winning here?

I still believe there shouldn't have been any settlement. This case should have been dismissed, as it's totally unfair and not right. The consumer was actually saving money by using their credit cards.

Sincerely,

William B. Barrington
Refund ID 38798464PGYY

cc: Bonny E Sweeney
    Coughlin Stoia et al LLP
    655 West Broadway, Ste. 1900
    San Diego, CA 92101

    Merrill G. Davidoff
    Berger & Montague, P.C.
    1622 Locust Street
    Philadelphia, PA 19103

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: CURRENCY CONVERSION FEES ANTITRUST LITIGATION | MDL No. 1409 |
| This Document Relates To: ALL ACTIONS | |

## OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT

J.Andrew Downey, PRO SE, hereby objects to the proposed settlement and avers as follows:

### PROOF OF MEMBERSHIP IN THE CLASS

1.    J. Andrew Downey made numerous foreign transactions between February 1, 1996 and November 8, 2006 with U.S.-issued Citibank AAdvantage Visa and MBNA America Visa cards.  Copies of statements evidencing some of these foreign transactions are attached as Ex. A.

### NOTICE OF INTENT TO APPEAR

2.    Objector, J. Andrew Downey, hereby gives notice that he intends to appear, PRO SE, at the Fairness Hearing scheduled for March 31, 2008 at 11:00 a.m. at the United States District Court for the Southern District of New York, 500 Pearl St., New York, NY 10007.

### OBJECTIONS

3.    The proposed settlement is unfair, unreasonable, and inadequate, and should not be approved.

4.    First, Class Counsels' request for an award of attorneys' fees in the amount of 27.5% of the estimated $313 million expected to remain in the settlement fund (after deductions for costs) is unreasonable, and results in a windfall to Class Counsel at the expense of the Class.

5.    In megafund cases such as this, courts have "traditionally accounted for these economies of scale by awarding fees in the lower range[s]." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 52 (2d Cir. 2000); *see also Id.* (noting that in cases with recoveries of between $50 and $75 million, courts typically award fees in the range of 11% to 19%); *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689, 2003 WL 22244676, at *6 (S.D.N.Y. Sept.29, 2003) ("[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement. Otherwise, those law firms who obtain huge settlements, whether by happenstance or skill, will be over-compensated to the detriment of the class members they represent."); *In re NASDAQ Money-Makers Antitrust Litig.*, 187 F.R.D. 465, 486 (S.D.N.Y. 1998) (explaining that "absent unusual circumstances, the percentage will decrease as the size of the fund increases" and thus "[i]n cases where a class recovers more than $75-$200 million .... fees in the range of 6-10 percent and even lower are common.") (quotation marks omitted).

6.    Since the fund here exceeds $300 million, attorneys' fees exceeding a 6-10% range of the settlement fund are unreasonable.

7.    Moreover, in *Schwartz v. Visa Int'l Corp.*, No. 822404-CA, which went to trial, counsel are already being paid $32 million. The attorneys in the *Schwarz* case are

some of the Plaintiffs' attorneys in this case. This further illustrates that the requested fee of 27.5% of the settlement fund is unreasonable and grossly excessive.

8.    Second, the requested incentive awards are unfair and unreasonable.

9.    Class Counsel are requesting "service awards" in the amount of $350,000 for each of the twenty class representatives. This equates to an average incentive award of $17,500 per class representative.

10.    In *In re Time Warner Erisa Litig.*, No. 02 Cv. 8853, 2007 WL 3145111 (S.D.N.Y 2007), this Court "conclude[d] that [a] requested $20,000 per-plaintiff fee would be excessive, especially in light of the indirect, and much smaller, monetary relief accruing to the more than 65,000 absent class members." citing *In re Sprint Corp. ERISA Litig.*, 443 F.Supp.2d at 1271 (reducing requested incentive award from $15,000 to $5,000, despite multimillion-dollar settlement amount, in light of fact that no individual class member stood to recover more than $1,000 from settlement).

11.    Here, refund options range from $25 per class member (Option 1) to a maximum of 1%-3% of foreign transactions (Option 3).

12.    Thus, the requested incentive awards are excessive in comparison to the small relief accruing to absent Class Members.

13.    Indeed, in *In re Stock Exchanges Options Trading Antitrust Litig.*, MDL No. 1283, 2006 WL 3498590) (S.D.N.Y.), this Court held:

> While several of the class representatives offered deposition testimony and otherwise fulfilled Plaintiffs' Counsel's various requests for information, assistance, and documentation, the Court finds the $5,000 completely unreasonable. If these Plaintiffs provided a service at all, it certainly wasn't worth $5,000 each. The only evidence Counsel offers in support of named Plaintiffs' incentive award-other than reference to $5000 awards in other cases-is that seven of the ten sat for depositions. The Court will award these named plaintiffs $100 per hour they sat in deposition; those

3

that did not even sit for deposition will receive no incentive award for the Court has no evidence they provided any service or took on any risks that deserve compensation other than lend their name to litigation.

*Id.* at *13.

14.    Accordingly, the requested $350,000 "service awards" for the 20 individual class representatives are also unreasonable and unfair to absent Class Members.

WHEREFORE, J. Andrew Downey respectfully requests that his objection to the requested attorneys' fees and incentive awards be sustained, and that he be awarded reasonable fees and costs.

Respectfully submitted,

J. Andrew Downey
PRO SE
4765 S.W. 80th Street
Miami, FL 33143
P: 305/613-0061
andy.downey@valdusre.bm

Dated:  February 13, 2008

4

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing Objections was served by

overnight mail on the parties, whose names and full addresses are listed below on the 13th

day of February, 2008:

Bonny E. Sweeney
LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS, LLP
655 W. Broadway, Ste. 1900
San Diego, CA 92101

Merrill G. Davidoff
BERGER & MONTAGUE, P.C.
1622 Locust St.
Philadelphia, PA 19103

Settlement Administrator
P.O. Box 290
Philadelphia, PA 19105

J. Andrew Downey
PRO SE
4765 S.W. 80th Street
Miami, FL 33143
P: 305/613-0061
andy.downey@valdusre.bm

Dated:  February 13, 2008

5

Los Angeles, 12-19-07

Claim# P1550027TISS

I, Ursula Ganz would like to object to the settlement against Visa, Mastercard and Diners Club.

Not only is this mayor fraud to millions of trusting customers, this is outrageus.
Of course they have to pay me back what they overcharched, + they have to pay liquidated damages on top .
I am with Visa and Mastercard since 1994 and I traveled every year for 2 weeks to germany. I was traveling to Hawaii, Mexico and various other countries.
They should have all this information in their system.
This is mayor fraud and I will seek legal advice myself.
In 10 years I purchased probably 25000$ with my creditcards, so 3% would be 750$ plus the same amount in liquidated damages plus a sum to settle.
I think it would be only fair to pay me a settlement of 8000$

Thank you
Ursula Ganz
3513 Laurel Canyonblvd.
Studio City
CA 91604
818-763-3525
Cell 310-666-9080

VISA #
MASTER #

December 18, 2008



Clerk of the Court
United States Courthouse
500 Pearl Street
New York, NY 1007-1581

Reference:  MDL No. 1409

To whom it may concern:

I have been notified of this class action law suit and the outrageous
compensation the lawyers are requesting.  I clearly object this settlement and do
not want any part of the compensation.  The lawyers are offering me $25 and
want compensation of 27.5% of $313 million PLUS expenses!

I frequently travel outside the US and frequently use my various credit cards on
most transactions.  Credit Card companies provide a valuable service and should
be compensated for their activities, especially the additional burdens of financial
transactions in foreign countries.

The law firm and attorneys creating this frivolous law suit should be dis-bard from
conducting business.  If this and similar law suits are continued to be awarded, it
will result in the downfall of the United States of America.

As a Court representing the citizens of this country, you have a Moral and Ethical
obligation to stop this from being implemented.


Sincerely,

Jason B. Grosskopf
American

January 25, 2008



Clerk of the Court
United States Courthouse
500 Pearl Street
New York, NY 10007-1581

Re:    Currency Conversion Fee Anti-Trust Litigation - MDL #1409
        W. E. Halverson Refund #ID 23791758YFMR - **Objection to Attorney Fees**

Dear Court:

We are writing you to Ojbect to the attorney fees being requested in the "Currency
Conversion Fee Anti-Trust Litigation Settlement". I have forty years of experience in
business and during that time I was involved in several court cases. The requested
attorney fees in this case are outrageous and unsubstantiateable under any circumstances.
The total settlement is $336 million, with attorney's claiming a right to $114,075,000 or
33.9508928%.

**We request the court take into consideration the following objections and, on behalf
of all affected parties, retain a professional auditing company.** The audit should
include but not be limited to fully substantiating every expense and to determining an
appropriate level, if any, of those "requested" fees .... like the 27.5% whopper.

In regard to your "Notice to Class Action Settlement", "How will the attorneys be paid?",
our comments as to your three categories of attorney fees are as follows (Incidently, the
wording therein and sequencing is very unclear and somewhat deceptive):

1) The attorneys are asking for $23, 000,000 (out of $336,000,000) for ".... costs for
administering the settlement and notice, plus interest, for attorneys' fees for investigating
the facts, litigating and resolving the case".

> While this number seems astronomical, one can appreciate that considerable
> expense has been incurred. It is our opinion that this court has the responsibility
> of insurring every expense (vouchers, bills, items, trip charges, hourly rates etc)
> are documented, verified and accurate on the basis of professional accounting
> standards. In particular please review the accuracy of the number, rate and
> amount of attorney, para legal and clerical fees and in turn their relationships to
> each other. All rates should be comparable to legal industry standards in
> geographically similar areas.

Page 2 - Currency Conversion Fee Anti-Trust Litigation MDL #1409
**Objection to Attorney Fees**

2) The attorneys are asking $5,000,000 (out of $336,000,000) for "....reimbursement of their expenses, not to exceed $5,000,000

> Again, we reiterate our belief in the responsiblity of the court to audit these expenses. Furthermore, it seems that this category may very well be "double dipping". These law firms and attorneys have held the charge card companies accountable and responsible for their actions. Law firms are businesses. Law firms and attorneys need to be held accountable and exemplify these same high standards of full disclosure of information and substantiating monies requested.

3) The attorneys ".... will request 27.5% ($86,075,000) of the estimated $313,000,000 for .... ????

> *"????.... no explanation given"* How can a request of this magnitude have no explanation? This is unbelieveable! It doesn't take much more than common sense to feel this needs some sort of explaination. That is a minimum.     Then, we feel        the law firms need to show why this action fits this explanation. Finally, and most importantly, we believe the law firms should be required to justify the amount requested. The court in its final determination needs to be verifiable by auditors, identical case studies and common sense. Furthermore, the legal firms should be challenged to prove what risks and profit margins are in categories 1) and 2) and the difference between this request 3) and the others.

> *".... first expense mentioned in your notice .... will request $86,075,000 "*
> How can fees of this magnitude be automatically pegged at this level? Any level?



> Let's start at zero. It seems to us that the court, class respondents and the companies involved deserve a complete explanation of this request in far more detail than your notice or court settlement hearing. What kind of a hidden fee is this? It is almost inconceiveable that these attorneys would sue card companies for non-disclosure of fees and then non-disclose this phenomenal request in their settlement.

This eighty six million, seventy five thousand dollars ($86,075,000) is three times (3xs) the already allowed attorney expenses and profit margin provided in 1) and 2).



23791758YFMR

## Refund Option 2
## Total Estimation Refund

You can complete this form to request the **Total Estimation Refund** or submit your application online at **www.ccfsettlement.com**.

The **Total Estimation Refund** is based on a 1% refund for estimates of typical foreign transaction activity using Visa, MasterCard and/or Diners Club credit, charge, or debit/ATM cards. The Settlement Administrator will estimate a fee refund using your responses to a few simple questions and available information that can be accessed by computer.

If you spent more than one week outside the United States or had more than $2,500 in foreign transactions from February 1, 1996 to November 8, 2006, you may prefer this Option to the Easy Refund. If you had extensive foreign travel or foreign transactions, you may prefer to provide more detailed annual estimates by using the Annual Estimation Refund Option, which may allow for refunds of up to 3% of foreign transactions.

To request the **Total Estimation Refund,** submit your application online or complete the following and mail this form as directed below:

1. If your name and/or address listed below is correct, leave the boxes to the right blank. Otherwise, cross out the incorrect information and print corrections in the boxes to the right.

*(Use boxes for name or address corrections)*

WARREN HALVERSON

(Last Name, First Name)

13701 NE 32ND PL

(Street Address)

BELLEVUE

(City)

WA 98005

(State)          (Zip)

2. Consider any trips that you took outside the United States from February 1, 1996 to November 8, 2006. For those trips, add up the total number of days that you spent outside of the U.S. Please enter your estimate of the total number of days outside of the U.S.:

   **O O 5 1**  Estimated Total Number of Days Outside of the U.S. From February 1, 1996 to November 8, 2006

3. Most travel has a major purpose: business, visiting friends or relatives, or leisure/vacation. For your total estimated foreign travel days from February 1, 1996 to November 8, 2006, how often did you travel for each of those purposes? Please check one box for each travel purpose.

| | Never | Rarely | Sometimes | Often | Mostly |
|---|---|---|---|---|---|
| Traveling on business | | | X | | |
| Visiting friends or relatives | | | | | |
| Vacation or leisure | | | | | |
| Other purpose for travel | | | | | X |

4. Please date and sign below:

   I certify that the information I have provided on this claim is true and correct to the best of my knowledge, and that this is the only claim form that I have submitted. I understand that I will receive only **ONE** payment from this settlement.

   Date: _1/25/08_   Signature: ▶ _Warren Halverson_

5. Refund requests must be submitted by May 30, 2008. You may submit your application online at **www.ccfsettlement.com** or mail your completed form to:

**Settlement Administrator**
**P.O. Box 290**
**Philadelphia, PA 19105-0290**

# DANIEL M. MCCLURE
## 2 LONG TIMBERS LANE
## HOUSTON, TEXAS 77024

January 30, 2008

U.S. District Clerk
United States District Court for the
Southern District of New York
500 Pearl Street
New York, New York 10007-1581

      Re:    In re Currency Conversion Fee Antitrust Litigation, MDL 1409

Dear Sir or Madam:

      Please file this Objection in the above-styled matter.

      I am a member of the settlement damages class in *In re Currency Conversion Fee Antitrust Litigation*, as shown by my attached claim form that I submitted to the Settlement Administrator.

      I hereby object to one aspect of the case that I understand will be heard at the final approval hearing on March 31, 2008, specifically the attorneys' fee request by the plaintiffs' attorneys in this class action. According to the class notice dated November 23, 2007 that was mailed to me, the lawyers for the class will request as fees 27.5% of the estimated $313 million settlement fund. I believe this fee is excessive and that a lower percentage fee should be awarded, in the range of 10% to 15%. I note that the fees sought in the Enron securities class action pending in Houston are closer to 10% of the settlement fund. It is also significant that, according to the information at the settlement website, www.ccfsettlement.com, the total amount of foreign transaction fee revenues are approximately $3.8 billion and the total settlement fund represents only 9% of the maximum total of such fees, so that the amount of the settlement is not very impressive in relation to the potential damages. Finally, the class notice indicates that Visa and MasterCard have already agreed to pay $32 million in attorneys' fees and expenses to the plaintiffs' lawyers in the *Schwartz* case, and the amount now sought would be in addition to that substantial fee.

      I am asserting no objection to the proposed settlement itself, but I am objecting to the amount of the attorneys' fees sought by the plaintiffs' lawyers in this case.

January 30, 2008
Page 2


Please confirm the filing of this letter objection by placing your file-stamp on the enclosed copy of this letter and returning it to me in the enclosed, stamped, self-addressed envelope. Thank you.

Very truly yours,

Daniel M. McClure

Enclosure

c:    Bonny E. Sweeney
Coughlin Stoia, et al., LLP
655 West Broadway, Ste. 1900
San Diego, CA 92101

Merrill G. Davidoff
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103

21142655XIEL



**Refund Option 2**
**Total Estimation Refund**

You can complete this form to request the **Total Estimation Refund** or submit your application online at **www.ccfsettlement.com**.

The **Total Estimation Refund** is based on a 1% refund for estimates of typical foreign transaction activity using Visa, MasterCard and/or Diners Club credit, charge, or debit/ATM cards. The Settlement Administrator will estimate a fee refund using your responses to a few simple questions and available information that can be accessed by computer.

If you spent more than one week outside the United States or had more than $2,500 in foreign transactions from February 1, 1996 to November 8, 2006, you may prefer this Option to the Easy Refund. If you had extensive foreign travel or foreign transactions, you may prefer to provide more detailed annual estimates by using the Annual Estimation Refund Option, which may allow for refunds of up to 3% of foreign transactions.

To request the **Total Estimation Refund**, submit your application online or complete the following and mail this form as directed below:

1. If your name and/or address listed below is correct, leave the boxes to the right blank. Otherwise, cross out the incorrect information and print corrections in the boxes to the right.

    (Use boxes for name or address corrections)

    DANIEL MCCLURE

    2 LONG TIMBERS LN

    HOUSTON

    TX 77024

2. Consider any trips that you took outside the United States from February 1, 1996 to November 8, 2006. For those trips, add up the total number of days that you spent outside of the U.S. Please enter your estimate of the total number of days outside the U.S.:

    | | | 8 | 0 | Estimated Total Number of Days Outside of the U.S. From February 1, 1996 to November 8, 2006

3. Most travel has a major purpose: business, visiting friends or relatives, or leisure/vacation. For your total estimated foreign travel days from February 1, 1996 to November 8, 2006, how often did you travel for each of those purposes? Please check one box for each travel purpose.

| | Never | Rarely | Sometimes | Often | Mostly |
|---|---|---|---|---|---|
| Traveling on business | X | | | | |
| Visiting friends or relatives | X | | | | |
| Vacation or leisure | | | | | X |
| Other purpose for travel | X | | | | |

4. Please date and sign below:

    I certify that the information I have provided on this claim is true and correct to the best of my knowledge, and that this is the only claim form that I have submitted. I understand that I will receive only **ONE** payment from this settlement.

    Date 12-16-07  Signature ▶ *Dan McClure*

5. Refund requests must be submitted by May 30, 2008. You may submit your application online at **www.ccfsettlement.com** or mail your completed form to:

    Settlement Administrator
    P.O. Box 290
    Philadelphia, PA 19105-0290

# Geoff Palmer

71 Saint Lawrence Way
North Attleboro, MA 02760-6289

T (508) 468-6986
ourfreebies@comcast.net

January 14, 2008

US District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-1581

Dear Clerk of the Court,

I am writing to object to a class action lawsuit (re Currency Conversion Fee Antitrust Litigation, MDL 1409) that I've been asked to be a part of. All fees for any credit card/ATM card are clearly laid out in any cardholder agreement. If a consumer disagrees with any fee, it is very simple to simply switch to a different credit/banking institution.

I also believe that this is a profit-seeking venture by the attorneys at Coughlin Stoia et al, LLP and Berger & Montague, P.C. This is clear from their settlement letter stating that they are seeking 27.5% of an estimated $313,000,000, plus interest, and reimbursement of expenses up to $5,000,000. These fees are more exorbitant than the banking fees they are suing over! They have also made it difficult to object to the case, stating that one must write to the court, as well as give notice to the attorneys via overnight mail, by hand, or certified mail.

I ask that you please dismiss this frivolous lawsuit.

Sincerely yours,

Geoff Palmer

cc: Bonny E. Sweeney
Merrill G. Davidoff



December 6, 2007

US District Court for the Southern District of New York
500 Pearl St
New York, NY  10007-1581

       Re: Objection to settlement of Class action Suit for Visa, MasterCard and
       Diners Club (Pauley)

Dear sir or madam:

       I am named as a participant in the above class action suit.  I have done no
foreign transactions and do not wish to participate.  I do not want any money from this
suit.  Further, I object to behavior so common amongst money-grubbing lawyers suing
everyone for everything and object to class action suits in particular as immoral.

       Thank you.

                         Sincerely,

                         Patricia L. Rath
                         1526 Blue Heron Way
                         South Bend, IN 46628



501 16th Avenue N.
Onalaska, WI 54650
December 5, 2007

Honorable William H. Pauley III,
District Judge
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In Re:  CURRENCY CONVERSION FEE
        ANTITRUST LITIGATION
        M21-95

Dear Judge Pauley:

As a class member plaintiff in the above litigation, as someone with nearly 20 years
experience as an arbitrator for the American Arbitration Association, and as a financial
and management consultant of some 30 years experience, I wish to inform the court of
certain inequities and inadequacies of the proposed settlement in the above action:

1.       The Defendants in the above action are the strong party in their relationships
between themselves and class members, so much so, both because of the complexity of
their credit card agreements (which make it difficult for class members to compare
agreements offered by differing Defendants) and various favorable terms that allow(ed)
them to revise such agreements almost without recourse by class members, especially
those with considerable balances carried from month to month, that they had an implied
fiduciary duty as well as contractual requirement to advise class members of changes in
terms that benefited Defendants vs. class members.

BECAUSE OF THIS, I BELIEVE IT IS APPROPRIATE TO ASSESS DEFENDANTS
PUNITIVE DAMAGES PERHAPS FAR IN EXCESS OF ACTUAL DAMAGES.

2.       Also because Defendants are the strong party, and are in possession of the most
detailed records in computer readable form, and could easily have been required to
produce a computer readable report of all foreign currency charges to each class member,
I consider it unconscionable as a class member that I have been required to spend many
hours finding and reviewing my records to apply for a refund of charges that were unjust
in the first place.  I estimate I will have spent perhaps 15 hours in the above for myself
and my wife for what may amount to about a $500 award.  And the plight of other class
members may be much worse as at least I have retained all my records.  Other class
members might have been required to pay for copies of monthly statements above what
for me would have been a totally inadequate minimum at no charge.  The result of
placing the burden of application on class members also assures that likely most class
members will not apply for the full award to which they are entitled, but instead will
settle for a relatively small award which will make this litigation "go away" for the
Defendants.  And then to add salt to the wound, the threat of audit, should it occur, would

require added time and expense to go back through records and make copies, which by the way, would also endanger the privacy of class members.

BECAUSE OF THIS, I BELIEVE THE DEFENDANTS SHOULD BE ASSESSED AN ADDITIONAL BURDEN OF 50% OF THE PROPOSED SETTLEMENT TO COMPENSATE CLASS MEMBERS FOR PLACING THE BURDEN OF PROOF ON US.

I ALSO BELIEVE THAT ANY CLASS MEMBER WHO IS SUBJECT TO AUDIT, SHOULD RECEIVE A DOUBLING OF HIS AWARD AS PENALTY FOR HIS OR HER ADDED BURDEN.

3.      The Defendants, who are expert and fastidious in applying interest in transactions of this nature, are not being asked to pay interest on their assessment of unjust fees, even though it has been determined that they are responsible for reimbursing for fees as long as 8 or 9 years ago. This further degrades the proposed settlement, depending on the year of reimbursement, and in my mind makes it "profitable" for the Defendants to have originally charged unjust fees. $1.00 owed in 1996 at say, the 17% minimum most of these Defendants would have charged class members for carried over balances, would have accumulated in 9 years to $4.10, with lesser adjustments for interest for lesser time periods.

BECAUSE OF THIS, I BELIEVE INTEREST SHOULD BE ADDED TO ALL AWARDS OVER THE AVERAGE PERIOD, CERTAINLY AT A RATE NOT LESS THAN THE ABOVE 17% PER ANNUM.

I ALSO BELIEVE THAT CAPPING THE SETTLMENT IS NOT APPROPRIATE IN THIS CASE, AS THE UNJUST CHARGES WERE JUST THAT: UNJUST. NO CLASS MEMBER AWARD SHOULD BE REDUCED JUST BECAUSE THE TOTAL OF ALL AWARDS IS IN EXCESS OF ANY PRECALCULATED FIGURE.

Since I did not see any of my above suggestions incorporated in the proposed award, my own opinion of the work of attorneys in this litigation is that it was less than adequate. I pray you will keep that in mind in setting final fees for their services.

I will be sure to advise you if either I or my wife are audited for our claim.

Respectfully submitted,


Francis L. Rost

<u>Attention:</u> U.S. District Court for the Southern District of New York

<u>From:</u> Ann Ruckstuhl, 21904 Almaden Avenue, Cupertino, CA 95014

<u>Class Membership:</u> Visa Cardholder

<u>Re:</u> Currency Conversion Fee Antitrust Litigation, MDL 1409

<u>Date:</u> December 6, 2007



To Whom This May Concern,

I would like to state my objection to the class action settlement pertaining to the Currency Conversion Fee Antitrust Litigation, MDL 1409, against Visa, MasterCard and Diners Club. Specifically, I object to the allocation of 27.5% of the estimated $313,000,000 settlement towards attorneys' fees. This is simply not equitable given that some these attorneys are already paid by Visa and MasterCard ($35,557,000 to be exact) in a subset of cases to this class action lawsuit.

I firmly believe it's the court's duty is to ensure an equitable compensation for consumers and attorneys. The current allocation heavily favors the attorneys and sends a wrong message to the consuming public. I would kindly request the court to conduct the following due diligence.

(1) Audit attorneys' fees and expenses reported. I wouldn't be surprised if they have inflated both time and costs.

(2) Establish a settlement allocation of 80% for consumers and 20% (total fees) for attorneys.

Please feel free to contact me directly if you have any questions.

Sincerely,

Ann Ruckstuhl

ann_ruck@yahoo.com

(408) 253-3329

U.S. District Court Settlement Administrator
P.O. Box 290
Philadelphia, PA 19105-0290

NOVEMBER 23, 2007

**REFUND ID 26625818GNCV**

ANN RUCKSTUHL
21904 ALMADEN AVE
CUPERTINO, CA 95014-2861

Dear Ann Ruckstuhl,

We are writing on behalf of the U.S. District Court because you are eligible to receive a Court-approved refund of fees charged to your eligible cards, which are Visa, MasterCard, and/or Diners Club credit, charge, and/or debit/ATM cards. The fees were based on foreign transactions, including both purchases and ATM withdrawals, from February 1, 1996 to November 8, 2006.

Please read the enclosed Notice explaining the proposed $336 million settlement and all of your options under the settlement.

If you choose to request a refund, you may use **one** of three Refund Options. Each of these Options will pay a single refund of fees charged for foreign transactions on **ALL** of your eligible cards. You may choose only **ONE** Option from the following:

**Refund Option 1:**  Request an **Easy Refund** of $25. This Option is recommended if you traveled outside of the U.S. for less than one week or had foreign transactions of less than $2,500 using your eligible cards during the 1996 to 2006 period. (Green Form); **OR**

**Refund Option 2:**  Request a **Total Estimation Refund** based on typical spending during travel and your answers to a few questions about your own travel outside of the U.S. This Option is recommended if you traveled outside of the U.S. for more than one week or had foreign transactions of more than $2,500 using your eligible cards during the 1996 to 2006 period. Refunds will be a maximum of 1% of estimated foreign transactions. (Blue Form); **OR**

**Refund Option 3:**  Request a refund based on information that you provide concerning your **Annual Estimated** foreign transactions during the 1996 to 2006 period. This Option is recommended if you had extensive foreign travel or foreign transactions and are willing to provide year-by-year information. Refunds will be a maximum of 1% to 3% of foreign transactions. This is the only Option you can use to get a refund for corporate card use. (Red Form)

Enclosed are three forms, one for each Refund Option. You may also file online at the Settlement Administrator's website **www.ccfsettlement.com,** using your Refund ID on the top of this letter. Please note that if the volume of claims is unexpectedly high, it may be necessary to adjust refund amounts.

Please disregard any earlier Notices that you may have received. Additional information is available online at **www.ccfsettlement.com** or by telephone at 1-800-945-9890.

Sincerely,

Settlement Administrator

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re CURRENCY CONVERSION FEE ANTITRUST LITIGATION, | ) ) ) |
| This Document Relates To: | ) MDL Docket No. 1409 ) M21-95 |
| ALL ACTIONS. | ) ) ) |

## OBJECTIONS OF JANE B. SELFE AND EDWARD M. SELFE TO THE SETTLEMENT AGREEMENT AND TO THE ATTORNEYS' FEES FOR SETTLEMENT CLASSES COUNSEL

Edward M. Selfe and Jane B. Selfe are husband and wife. Jane B. Selfe is a member of the "Damages Class," Refund ID Number 052704571XEE and Refund ID Number 44480489QRW0. Edward M. Selfe is a member of the "Injunction Class" (Visa card 000 7589 and MasterCard 000 9385). They have the following objections to (i) the Settlement Agreement and (ii) attorneys' fees for Settlement Classes Counsel:

1.    **The Settlement Agreement should not be approved because the web of relationships among co-lead counsel Milberg, Weiss, Bershad, Hynes and Lerach LLP, Settlement Classes Co-Counsel Lerach, Coughlin, Stoia, Geller, Rudman and Robins, LLP and Chase Defendants' Counsel Skadden, Arps, Slate, Meagher & Flom, LLP raises serious doubts about whether Settlement Classes Counsel have fairly and adequately represented the interests of the Settlement Classes.**

The web of relationships on both sides of this case is reflected by the following chronology:

(a)    10/09/01: Milberg, Weiss, Bershad, Hynes and Lerach, LLP ("Milberg Weiss") is appointed Co-Lead Counsel in this case (DE 10).

(b)    5/01/04: Lawyers from Milberg Weiss, led by William S. Lerach and including Bonny E. Sweeney and Christopher Burke, leave Milberg Weiss and form the law firm of Lerach, Coughlin, Stoia, Geller, Rudman and Robins, LLP in San Diego, California ("Lerach Coughlin").

(c)    10/01/04: A federal grand jury in Los Angeles begins a criminal investigation of kickbacks paid to named plaintiffs in class actions by Milberg Weiss during the years 1981 to 2005. *First Superseding Indictment*, CR 05-587(A) (U.S.D.C. CD CAL.)

(d)    1/01/05: At some time during 2004 or 2005, Lerach Coughlin engaged Skadden, Arps, Slate, Meagher & Flom, LLP (Skadden Arps) to represent Lerach Coughlin in connection with the criminal investigation of Milberg Weiss and William S. Lerach.

(e)    9/30/05: Lerach Coughlin moves to be appointed Co-Class Counsel in this case (DE 401).

(f)    3/21/06: Settlement negotiations in this case begin between Lerach Coughlin representing plaintiffs and Skadden Arps representing the Chase Defendants (DE 437).

(g)    5/18/06: Milberg Weiss is indicted by the October 2004 Grand Jury of the United States District Court for the Central District of California for allegedly paying kickbacks to class representatives in class action lawsuits. *First Superseding Indictment, supra.*

(h)    7/20/06: The Settlement Agreement is executed by Lerach Coughlin as Settlement Classes Co-Counsel and Skadden Arps as counsel for the Chase Defendants.

(i)    9/14/07: Lerach Coughlin notifies this Court and counsel of record in this case of a change in its name to Coughlin, Stoia, Geller, Rudman and Robins, LLP (DE 515).

(j)    9/18/07: William S. Lerach agrees to plead guilty to a conspiracy to pay kickbacks to class action representatives (USDC-CD-Cal.-CR07-00964, Doc. 6).

At some point during 2004 or 2005 Lerach Coughlin engaged Skadden Arps to represent Lerach Coughlin in connection with the criminal investigation of Milberg Weiss and William S. Lerach brought by the federal grand jury in Los Angeles. That representation of Lerach Coughlin by Skadden Arps continued during 2006 and 2007. See In re Chiron Corporation Securities Litigation, No. C-04-4293 (VRW) in the United States District Court for the Northern District of California, 2007 WL 4249902 (11-30-07).

While the negotiations for the settlement of this case took place during 2006 with Lerach Coughlin representing plaintiffs and Skadden Arps representing defendants, Skadden Arps was representing Lerach Coughlin in connection with the federal grand Jury investigation of kickbacks being paid to class action representatives by Milberg Weiss and William S. Lerach. This relationship between Lerach Coughlin and Skadden Arps, that existed throughout 2006 and 2007, raises very serious doubts about whether Lerach Coughlin could fairly and adequately represent the interests of the class as required by F.R.C.P. 23(g). The Settlement Agreement provides that Lerach Coughlin (not Coughlin Stoia) is to be Settlement Classes Co-Counsel. The Settlement Agreement should not be approved under these circumstances. In re Chiron Corporation Securities Litigation, supra. In Chiron, Chief Judge Vaughn W. Walker refused to approve a class action settlement because the circumstances were the same as in this case, i.e., Lerach Coughlin represented class action plaintiffs, Skadden Arps represented class action defendants and Skadden Arps represented Lerach Coughlin in the Milberg Weiss and William S. Lerach criminal investigation.

The fact that Bonny E. Sweeney and Christopher Burke may have had nothing to do with the kickbacks does not change the circumstances. The United States District Court for the District of Minnesota *sua sponte* severed a partner of Milberg Weiss, Bershad & Schulman, LLP, from his service on the Plaintiffs' Steering Committee and from continued service on behalf of the transferee plaintiffs in a product liability case which was transferred by a multidistrict litigation panel. In re Medtronic, Inc. Implantable Defibrillator Product Liability Litigation, 434 F.Supp. 2d 729 (D. Minn. June 5, 2006). The Court stated that there was no indication that the severed partner had been guilty of any unethical behavior.

In Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620, 138 L. Ed. 689 (1997) involving a pre-packaged class action settlement, the U. S. Supreme Court stated that the adequacy of class counsel should be given heightened attention by the district court in class action settlements made before class certification and the appointment of class counsel. In the settlement phase of a class action, the district court judge has the high duty of care of a fiduciary with respect to the class. Reynolds v. Beneficial Nat. Bank, et al., 288 F.3d 277 (7th Cir. 2002).

2.    **The Settlement Agreement should not be approved because the notice of the settlement did not disclose the web of relationships among Co-Lead Counsel Milberg Weiss, Co-Class Counsel Lerach Coughlin and Chase Defendants' counsel Skadden Arps.**

The notice of this class action settlement ("Notice") that was sent to Visa and MasterCard cardholders does not reflect in any manner the relationships between (i) Milberg Weiss, (ii) Lerach Coughlin and (iii) Skadden Arps during the pendency of this case. The Notice states that this Court had appointed Bonny E. Sweeney of Coughlin, Stoia, et al. LLP and Merrill G. Davidoff of Berger & Montague, P.C. to represent members of the settlement classes. The failure of the Notice to inform some 30 million class members of the relationships between (i) Milberg

Weiss, (ii) Lerach Coughlin and (iii) Skadden Arps during the pendency of this case requires the Court to deny approval of the settlement. In re Chiron Corporation Securities Litigation, supra. The Notice did not inform the 30 million members of the Settlement Classes of the following material facts:

(a)     The appointment of Milberg Weiss as Co-Lead Counsel in 2001;

(b)     The federal grand jury investigation of alleged kickbacks paid by Milberg Weiss and William S. Lerach to class action representatives that began in 2004;

(c)     The formation of Lerach Coughlin in May, 2004 by lawyers from Milberg Weiss;

(d)     The engagement of Skadden Arps by Lerach Coughlin in 2004 or 2005 which continued during 2006 and 2007;

(e)     The Indictment of Milberg Weiss on May 18, 2006;

(f)     The negotiation and execution of the Settlement Agreement by Lerach Coughlin and Skadden Arps in 2006; and

(g)     The agreement of William S. Lerach on 9/18/07 to plead guilty to a conspiracy to pay kickbacks to class action representatives.

3.     **The Settlement Agreement should not be approved because the notice of the settlement did not disclose that the Defendants could terminate the Settlement Agreement if the number of opt-outs by Settlement Damages Class members exceeded a specified amount.**

Section 14(b) of the Settlement Agreement requires that Settlement Classes Counsel provide counsel for the Defendants with the total number of persons who have opted out

of the Settlement Damages Class and of their applicable accounts. Based upon this report, the Defendants, in their sole discretion, may terminate the Settlement Agreement and obtain repayment of the Settlement Fund in accordance with the "Termination by Defendants Agreement." Such Agreement was executed concurrently with the Settlement Agreement and presented to the Court in camera in order to conceal the Termination by Defendants Agreement from the class.

The Notice does not disclose that the Defendants had the right to terminate the Settlement Agreement if the number of opt-outs from the Settlement Damages Class was too large. This right of the Defendants to terminate the Settlement Agreement is relevant and material information which should have been disclosed in the Notice. In Chiron, supra, the district court refused to approve the class action settlement because the defendants' right to terminate the settlement based upon the number of opt-outs had not been disclosed in the notice of the settlement.

4.    **The fact that the percentage of the settlement fund to be awarded as attorneys' fees for Settlement Classes Counsel is referred to in the Settlement Agreement (¶ 11) and that the defendants will not challenge or support that percentage means that Settlement Classes Counsel did not fairly and adequately represent the interests of the Class.**

The simultaneous negotiation of a settlement fund and attorneys' fees for settlement class counsel raises the question of whether settlement class counsel has fairly and adequately represented the interest of the class. In re Community Bank of Northern Virginia, 418 F.3d 217, 307-08 (3[d] Cir. 2005); In re General Motors Corporation Pick Up Truck Fuel Tank, 55 F.3d 768 (3[d] Cir. 1995). The risk that settlement class counsel will accept a lower settlement fund in

exchange for an agreement on attorneys' fees is always present in such simultaneous negotiations. The unreasonable attorneys' fees referred to in Section 11(a) of the Settlement Agreement indicates that this may have occurred in this case. In the Settlement Agreement (¶ 11), the defendants agreed not to challenge or support attorneys fees for settlement class counsel. This means that the issue of attorneys' fees will be raised only by objectors.

5.    **The application of Settlement Classes Counsel for attorneys' fees in the amount of 27½% of $313 million is unreasonable, and such fees should be less than 15% of $313 million in order to be consistent with percentage fee awards made in large class action settlements.**

Empirical analysis of common fund fee awards indicates that when the settlement fund is less than $100 million, the fee award falls in the range of 13% to 20%. When the settlement fund exceeds $100 million, the fee award ranges from 6% to 10%. See Attorney Fee Awards, 3rd ed., Alba Conte, Vol. 1, Sec. 2.9, page 134-5.

6.    **A special master should be appointed to examine the time records of those Settlement Classes Counsel who participated in the Schwartz class action litigation in California to be certain that there is no duplication in the time devoted to this case and to the Schwartz case by such Settlement Classes Counsel.**

The Settlement Agreement does provide that lawyers' time spent on the Schwartz case, Schwartz v. Visa Int'l Corp., No. 822404, 2003 WL 1870370 (Cal. Sup. Ct. 4-7-03), cannot be charged to this case, but an examination by a special master is required to verify that provision of the Settlement Agreement.

7.    **The agreements regarding future conduct of the Defendants should be for a period of at least ten (10) years rather than five (5) years.**

Section 4 of the Settlement Agreement provides that the Defendants agree to make certain disclosures with respect to Foreign Transaction Fees on credit card accounts for a period of five (5) years commencing upon the Effective Date of the Settlement Agreement. This period should be at least ten (10) years.

## INTENTION TO APPEAR
## AT FAIRNESS HEARING

Jane B. Selfe and Edward M. Selfe ~~and~~ intend to appear at the final approval hearing to be held on March 31, 2008 at 11:00 a.m. at the U.S. District Court for the Southern District of New York, 500 Pearl Street, New York, NY 10007-1581.

Respectfully submitted,

JANE B. SELFE, Pro Se
2600 Arlington Avenue South #84
Birmingham, AL 35205
Tel. Ph. 205-933-0427

EDWARD M. SELFE, Pro Se
2600 Arlington Avenue South #84
Birmingham, AL 35205
Tel. Ph. 205-933-0427

## CERTIFICATE OF SERVICE

I hereby certify that on this _8_ day of February, 2008, I served a copy of this document by United States certified mail, return receipt requested, on the following persons:

Bonny E. Sweeney
Coughlin, Stoia, Geller, Rudman and Robins, LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

Merrill G. Davidoff
Berger & Montague, PC
1622 Locust Street
Philadelphia, PA 19103

Peter E. Greene
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036-6522

_E. M. Selfe_
EDWARD M. SELFE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  | X |  |
|---|---|---|
| IN RE | : |  |
| CURRENCY CONVERSION FEE | : | MASTER FILE NO. |
| ANTITRUST LITIGATION | : |  |
|  | : | MDL 1409 |
| This Document Relates To: | : |  |
|  | : |  |
| ALL ACTIONS | : |  |
|  | X |  |

## NOTICE OF OBJECTION AND INTENTION TO BE HEARD AT SETTLEMENT

TO THE HONORABLE COURT:

Please take notice that class member, James Wilson, objects to the Court Approving Attorneys' Fees of an amount greater than $30 million and intends to have Douglas A. Cole, Esquire argue on his behalf at the Settlement Hearing or consent to disposition of the objection on the papers as may be appropriate.

Respectfully Submitted,

Douglas A. Cole, Esquire
Stem & Cole
571 Milford-Warren Glen Road
Milford, NJ 08848
(908) 995-4405

Dated: February 11, 2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
                                    X
IN RE:                              :
CURRENCY CONVERSION FEE             :      MASTER FILE NO.
ANTITRUST LITIGATION                :
                                    :      MDL 1409
This Document Relates To:           :
                                    :
ALL ACTIONS                         :
                                    X
```

## OBJECTOR JAMES WILSON'S OBJECTION IN OPPOSITION TO THE COURT APPROVING ATTORNEYS' FEES IN EXCESS OF $30 MILLION

Stem & Cole on behalf of objecting class member James Wilson, respectfully submits this memorandum of law in support of his objection in opposition to class counsel's request for approval of attorneys fees greater than $30 Million in this matter.

James Wilson is a member of the damages class that was certified by the court for the settlement of this matter. (See Affidavit of James Wilson along with Letter from Settlement Administrator incorporated herein as Exhibit "A").

## THE SETTLEMENT

The settlement calls for the defendants to pay $336 million to the class which does pay for the administration of the settlement along with attorneys' fees and expenses. In addition to the $336 million the defendants propose to pay approximately $35 million for attorneys' fees in the state court litigation that involves the same facts, parties and issues as those in this case. Defendant's offer this payment presumably to induce the state court plaintiffs' attorneys agree to a global settlement.

1

Pursuant to the settlement agreement co-lead counsel are going to petition the Court for an award of attorneys fees in the amount of twenty seven and one half percent (27.5%) of the net settlement fund or $86 million. The same fee that plaintiff's propose to receive for the other cases should be sufficient here under controlling Second Circuit law.

<u>ARGUMENT</u>

I.    **THIS COURT SHOULD APPROVE THE SETTLEMENT HOWEVER NOT APPROVE THE ATTORNEYS' FEES IN EXCESS OF $30 MILLION**

    A.    **THE STANDARDS SET FORTH IN <u>GIRSH V. JEPSON</u> HAVE BEEN MET BY THE PARTIES AND THE COURT SHOULD APPROVE THE SETTLEMENT**

The Court of Appeals in <u>Girsh v. Jepson</u>, 521 F.2d 153 (3rd Cir. 1975), set forth a list of factors that Courts should consider when evaluating a settlement of representative litigation. The Girsh factors include the following: 1) the complexity, expense and likely duration of the litigation; 2) the reaction of the shareholders to the settlement; 3) the stage of the proceedings and the amount of discovery completed; 4) the risks of establishing liability. Id. at 157.

Objector Wilson concedes that the <u>Girsh</u> factors support the proposed settlement. The settlement of approximately $336 million is an excellent compromise based on the potential damages. Accordingly, there is no reason for any discussion on a formal basis as to the merits of the settlement to the class members.

    B.    **THIS COURT SHOULD APPLY THE STANDARDS OF THE LEADING CASE ON ATTORNEYS' FEES IN THE SECOND CIRCUIT, GOLDBERGER V. INTEGRATED RESOURCES, INC.**

In <u>Goldberger v. Integrated Resources, Inc.</u> 209 F.3d 43 (2d Cir. 2000), the court determined that the district court did not abuse its discretion

2

in choosing the lodestar method or in awarding a fee of about four percent (4%) of the total recovery.  In Goldberger, id., a securities class action had settled and plaintiffs' counsel had requested a fee amounting to 25% of the recovery or $ 13.5 million. The district court awarded plaintiffs' counsel $ 2.1 million amounting to only four percent (4%) of the recovery based on counsel's lodestar of hours actually and reasonably billed.

The Goldberger court reasoned that whether the fees are calculated pursuant to the lodestar or percentage methods, the fees awarded in common fund cases may not exceed what is reasonable under the circumstances. In doing so, the Goldberger court rejected plaintiffs' counsels argument that 25% of the recovery whether reached by application of a multiplier or as to a straight percentage is an established "benchmark" to be distasteful. Id. at 52. The Goldberger court reasoned that contingency risk and quality of representation must be considered in setting a reasonable fee, but these factors, however do not always compel enhanced fees. The district court concluded that enhancing fees above the already generous lodestar rates would likely result in counsel's overcompensation based on the district court's findings that: 1) counsel benefited by work done by federal prosecutors; 2) there was no ground breaking issue; 3) likelihood of non-payment was slim; 4) the use of hourly billing rates compensated counsel for delays in payment; 5) use of high hourly billing rates compensated counsel for quality efforts. Further, the district court reasoned that plaintiffs' counsel had a low risk of nonrecovery in this matter based on the merits of the case. Id. at 55.

Further, it is clear from Goldberger that there is no standard or "benchmark" as to a percentage of the settlement fund in the Second

3

Circuit. The controlling standard set forth by the Goldberger court is for the district court to award a reasonable fee under the circumstances. Granting the plaintiffs attorneys a fee in the amount of $86 million would not be a reasonable fee under the circumstances because the plaintiffs have stated that these same circumstances justify $35 million for the other cases. Class counsel cannot be heard to argue that the same fee is not appropriate in this litigation when it presents no facts to support a finding that more time was spent on this case, that there was more risk or that any other circumstance sets this case apart from related litigation. The only difference here is that the overall recovery is larger, but percentage recoveries for securities class actions are not the controlling law in the Second Circuit. The Court should limit the fee to the attorneys to $30 million.

C.   **THE COURT MUST ASSESS THE ATTORNEYS ON A LODESTAR ANALYSIS**

I do not argue that this Court should completely reject co-lead counsels' argument for a "percentage of the fund" approach. As outlined in the Goldberger case, the court should utilize the lodestar method to help determining a fair and reasonable fee in this case. However, the Goldberger Court was concerned that windfalls to class counsel should be avoided. Id. at 49. A recent opinion of the Second Circuit opined that the legal fee should be one of moderation. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Albany, 484 F.3d 162 (2d Cir. 2007). The Second Circuit said in Arbor Hill that once the range of reasonableness has been determined, an award of attorneys fees should be the lower end of the range. The holding of Arbor Hill requires the District Court to focus on a minimum of a legal fee. Objector Wilson maintains that a fee of $30

4

million is consistent with the Second Circuits holding in <u>Arbor Hill</u>.

There is also a strong possibility that work product from related litigation was involved achieving the result in this case as the same facts, law, evidence, and counsel were involved in many of those cases. In the Settlement Agreement, co-lead counsel agrees that in the application for the Fee and Expense Award will not include any time or expense incurred in connection with the Schwartz State FX Case. (See paragraph 11(a) of the Settlement Agreement.)  The Court must ensure that the lawyers are not charging for tasks that were done in the Schwartz case and not this litigation.

The Court should appoint an administrator to assess the actual time that the attorneys in this matter spent on the litigation.  I cam make myself available to review the attorney's time in this matter and I am confident that other counsel for objectors and several other professionals will as well.

**D.**   **THE COURT MUST DETERMINE THE EXACT AMOUNT**
~~**OF CLASS MEMBERS COMPLETE THE CLAIMS PROCESS**~~
**BEFORE DETERMINING THE ATTORNEYS' FEE**

The Court should wait until the period to file a claim form is complete and the Claims Administrator provides information as to the exact number of class members who filed the claim form.  Without knowing the exact number of claims and the value of the claims submitted, it is impossible to know the value of the settlement.  It is therefore impossible to fairly calculate an attorney fee based on any formula.  Moreover, one of the claim options is a short form application for $25.00.  Many potential claimants will not bother to fill out a send in a form for such a small amount of money.

The Honorable Richard M. Berman, U.S.D.C., Southern District of New York required the parties to wait to determine the attorneys' fees until the Court could accurately assess the actual benefit of the Settlement to the class in In re: Excess Value Insurance Coverage Litigation, U.S.D.C., S.D.N.Y., M-21-84 (Nov. 2, 2005); See also, In re: Compact Disc Minimum Advertised Price Antitrust Litig., 292 F.Supp.2d 184, 189-90 (D.Me. 2003) (deferring award of attorneys' fees until experience shows how many vouchers are exercised and thus the value of the settlement). Although the Insurance Coverage case deals with coupon settlements the reasoning by the Court is instrumental here. In that matter, Judge Berman approved the Settlement in July of 2004 but waited to decide the amount of attorneys' fees until the time where it could be determined how many of the defendant, UPS, coupons were redeemed. Plaintiffs counsel had submitted an expert report stating that the Settlement had a value of $265 million and the value of the vouchers $4,863,877. The Court found that Dr. Rosen had overstated the value of the voucher program by 4,000% and adjusted counsel fees accordingly.

Objector Wilson believes that this Honorable Court should follow the lead of Judge Berman and wait until the deadline of the claims process to determine the exact amount of the benefit to the class members.

## II.   THIS COURT CANNOT APPROVE ATTORNEYS' FEES IN THE STATE COURT ACTIONS

According to the Settlement Agreement the defendants in this matter propose to pay attorneys' fees in the amount of $35.557 million to the

attorneys in a California state court action involving the same issues. Those actions are not before this Court and should be resolved according to the controlling law of the jurisdictions involved.    The payment of $35,557,000.00 should be approved.

CONCLUSION

For all of the reasons set forth herein and in the testimony to be submitted at the hearing, Objector Wilson respectfully submits that the Settlement Agreement should be Approved by this Honorable Court, but the attorneys' fees should be limited to $30 million. In conclusion, an award of attorneys' fees greater than $30 million would not be fair nor adequate nor reasonable.

Respectfully submitted,

Stem & Cole

Douglas A. Cole, Esquire
Stem & Cole
571 Milford-Warren Glen Road
Milford, NJ 08848
(908) 995-4405

Dated: February 11, 2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
─────────────────────────────── X
IN RE:                          :
CURRENCY CONVERSION FEE         :    MASTER FILE NO.
ANTITRUST LITIGATION            :
                                :    MDL 1409
This Document Relates To:       :
                                :
ALL ACTIONS                     :
─────────────────────────────── X
```

### AFFIDAVIT OF JAMES W. WILSON

I, James W. Wilson, reside at 8 Sleepy Hollow Road, Stratford, New Jersey, 08084.

I am a member of the class as I have made numerous purchases overseas with my credit cards.

I object to the Settlement due to the class members receiving a small amount of money and the lawyers getting millions.

I retained Douglas A. Cole, Esquire to represent me in objecting to the Settlement.

I intend and desire to have Mr. Cole argue for me in Court at the Final Approval Hearing that the Settlement is unfair and should not be approved by the court.

Date: 2|11|08

James W. Wilson

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 11 DAY
OF February, 2008

NOTARY PUBLIC

```
┌─────────────────────────────┐
│        NOTARIAL SEAL        │
│        LAURA MURPHY         │
│        Notary Public        │
│     JENKINTOWN BOROUGH      │
│      MONTGOMERY COUNTY      │
│ My Commission Expires Dec 28, 2008 │
└─────────────────────────────┘
```

SERVICE LIST

Clerk, U.S. District Court
Southern District of New York
Federal Courthouse
500 Pearl Street
New York, NY 10007-1581

Bonny E. Sweeney
Coughlin, Stoia et al. LLP
555 West Broadway, Ste. 1900
San Diego, CA 92101

Merrill G. Davidoff, Esq.
Berger & Montague
1622 Locust Street
Phila., PA 19103

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re CURRENCY CONVERSION | ) | 1:01-md-1409-WHP |
| FEE ANTITRUST LITIGATION | ) | M-21-95 |
| | ) | |
| | ) | |

## OBJECTION AND NOTICE OF INTENTION TO APPEAR OF
## CLASS MEMBERS MARK SCHULTE AND WILLIAM ZORN

COME NOW class members Mark Schulte[1], 2208 Pestalozzi, St. Louis, Missouri 63118,

and William Zorn[2], 2314 S. 12th Street, St. Louis, Missouri 63104, hereby object to the proposed

settlement in this matter and notify the court of their intention to appear and argue in support of

said objections at the fairness hearing, and in support thereof, state:

## THE AMOUNT OF ATTORNEYS' FEES SOUGHT IS EXCESSIVE

The notice states that counsel will seek no more than 27.5% of the net settlement fund.

Counsel in the present matter are seeking an award of $86 million.  In addition,  counsel has

negotiated a side deal wherein counsel in the Schwartz and other litigation will be paid over

$35.5 million, for a total attorneys' fee award of $121.5 million, or approximately 38 percent of

the estimate $313 million net settlement fund.  Said amount is excessive and unwarranted.

While the notice attempts to explain this away by stating that the $35.5 million side deal

will not reduce the settlement fund, it should be included in the fund for purposes of determining

counsel's fee, since that money, along with the gross settlement fund, constitutes the total amount

that Defendants are willing to pay to buy their peace.  To do otherwise would allow class counsel

---

[1] Class Member Mark Schulte's claim form, evidencing proof of class membership, is attached hereto as Exhibit A.

[2] Class Member William Zorn's claim form, evidencing proof of class membership, is attached hereto as Exhibit B.

1

to circumvent the Notice and the clear authority in this Circuit, where any award of attorneys' fees should be governed by moderation and the understanding that paying clients wish to pay the minimum amount necessary to litigate an action effectively.[3]  See, e.g., Arbor Hill Concerned Citizens Neighborhood Assoc. v. Albany, 484 F.3d 162 (2d Cir. 2007).

Counsel in the Schwartz litigation not only were unsuccessful in their prosecution of that matter, Schwartz v. Visa, 132 Cal. App. 4th 1452, 1460 (1st App. Dist. 2005), there is no evidence whatsoever that the Schwartz action provided any benefit to the present settlement.  In short, class counsel is seeking to require class members in the current action to foot the bill for unsuccessful litigation that provided them no benefit, a position that is both untenable and without precedent.  The Court should not allow class counsel to line their pockets with additional fees at the expense of the current class members, and should thus consider those payments as part of the attorneys' fees in the present case, and reduce the amount award to current class counsel by the amount of those payments.

Counsel in the present matter have not itemized their time records, making it impossible to determine whether hours spent in the Schwartz litigation are being billed to the present action, resulting in double payment for those hours.[4]  The Court should require specific time records to determine what time was spent in prosecution of the current action and what time was spent in the prosecution of the other actions to prevent double dipping by those counsel. Class counsel has simply not provided enough information to apply a lodestar cross-check, which is

---

[3] Significantly, it does not appear that the funds to be paid to the counsel in Schwartz and other litigation are subject to judicial review in any forum.  Such a scenario should be viewed with suspicion by the Court, as to ignore those payments in determining an appropriate fee in this matter would also circumvent the authority of this Court.

[4] It also appears that hourly rates of many of the attorneys are inflated, and that the number of hours billed by partners is excessive in relation to the hours billed by associates.  The Court should require production of detailed time records to determine the appropriateness of the hours claimed and the respective rates charged by counsel.

2

encouraged in this circuit. <u>Goldberger v. Integrated Resources, Inc.</u>, 209 F.3d 43, 56 (2d Cir. 2000).

## CONCLUSION

Class counsel is seeking an excessive fee in the present case, and seeking to circumvent the authority of this Court to review an award of attorneys' fees by striking a side deal for additional fees at the expense of current class members. The fee in this case should be reduced by the amount of any payments to counsel in the <u>Schwartz</u> and other cases, and counsel should be required to submit detailed time records to ensure that time is not being double billed and that rates and/or hours have not been inflated.

RESPECTFULLY SUBMITTED,

J. Scott Kessinger #48221
7304 Michigan Avenue
St. Louis, MO  63111
(314) 369-5115
FAX: (314) 754-8370
jskess@charter.net

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served on this 13th day of February, 2008, via regular U.S. Mail, postage prepaid, upon:

Bonny E. Sweeney
Coughlin Stoia, et al. LLP
655 W. Broadway, Suite 1900
San Diego, CA 92101

Merrill G. Davidoff
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103

3



## Refund Option 2
## Total Estimation Refund

You can complete this form to request the **Total Estimation Refund** or submit your application online at **www.ccfsettlement.com**.

The **Total Estimation Refund** is based on a 1% refund for estimates of typical foreign transaction activity using Visa, MasterCard and/or Diners Club credit, charge, or debit/ATM cards. The Settlement Administrator will estimate a fee refund using your responses to a few simple questions and available information that can be accessed by computer.

If you spent more than one week outside the United States or had more than 32,500 in foreign transactions from February 1, 1996 to November 8, 2006, you may prefer this Option to the Easy Refund. If you had extensive foreign travel or foreign transactions, you may prefer to provide more detailed annual estimates by using the Annual Estimation Refund Option, which may allow for refunds of up to 3% of foreign transactions.

To request the **Total Estimation Refund**, submit your application online or complete the following and mail this form as directed below.

1. Enter your current name and address in the boxes below.

NAME: `S C H U L T E   M A R K`
(Last Name, First Name)

ADDRESS: `2 2 0 8   P E S T A L O Z Z I`
(Street Address)

CITY: `S T   L O U I S`
(City)

STATE: `M O`  ZIP: `6 3 1 1 8`
(State)  (Zip)

2. For identification purposes, provide the last four (4) digits of your social security number in the following boxes: `2 6 6 4`

3. Your refund will cover ALL fees for ALL eligible cards that you used for foreign transactions from February 1, 1996 to November 8, 2006. In order to establish your qualification for the Total Estimation Refund, you must provide information for ONE of your eligible cards. You must have been the primary cardholder during the 1996 to 2006 time period above. In the boxes below, please provide the account number and the name of the bank that issued the card for ONE of your eligible cards.

▬▬▬▬▬▬▬▬▬▬
Visa, MasterCard, or Diners Club Account Number

`B A N K   O F   W A S H I N G T O N   M I S S O U R I`
Bank That Issued Card

4. Consider any trips that you took outside the United States from February 1, 1996 to November 8, 2006. For those trips, add up the total number of days that you spent outside of the U.S. Please enter your estimate of the total number of days outside of the U.S.:
`6 0` Estimated Total Number of Days Outside of the U.S. From February 1, 1996 to November 8, 2006

5. Most travel has a major purpose: business, visiting friends or relatives, or leisure/vacation. For your total estimated foreign travel days from February 1, 1996 to November 8, 2006, how often did you travel for each of those purposes? Please check one box for each travel purpose.

|                              | Never | Rarely | Sometimes | Often | Mostly |
|------------------------------|-------|--------|-----------|-------|--------|
| Traveling on business        |       |        | ✗         |       |        |
| Visiting friends or relatives|       |        | ✗         |       |        |
| Vacation or leisure          |       |        |           | ✗     |        |
| Other purpose for travel     |       |        |           |       |        |

6. Please date and sign below:

I certify that the information I have provided on this claim is true and correct to the best of my knowledge, and that this is the only claim form that I have submitted. I understand that I will receive only ONE payment from this settlement.

Date: `2/12/08`  Signature: ▶ _(signature)_

7. Refund requests must be submitted by May 30, 2008. You may submit your application online at **www.ccfsettlement.com** or mail your completed form to.

Settlement Administrator
P.O. Box 290
Philadelphia, PA 19105-0290

*Exh. A*



### Refund Option 2
### Total Estimation Refund

You can complete this form to request the **Total Estimation Refund** or submit your application online at **www.ccfsettlement.com**.

The **Total Estimation Refund** is based on a 1% refund for estimates of typical foreign transaction activity using Visa, MasterCard and/or Diners Club credit, charg or debit/ATM cards. The Settlement Administrator will estimate a fee refund using your responses to a few simple questions and available information that can be accessed by computer.

If you spent more than one week outside the United States or had more than $2,500 in foreign transactions from February 1, 1996 to November 8, 2006, you may prefer this Option to the Easy Refund. If you had extensive foreign travel or foreign transactions, you may prefer to provide more detailed annual estimates by using th Annual Estimation Refund Option, which may allow for refunds of up to 3% of foreign transactions.

To request the **Total Estimation Refund**, submit your application online or complete the following and mail this form as directed below:

1. Enter your current name and address in the boxes below.

NAME  Z U R N   W I L L I A M
(Last Name, First Name)

ADDRESS  2 3 1 4   S O   1 2 T H   S T
(Street Address)

CITY  S T   L O U I S
(City)

STATE ZIP  M O   6 3 1 0 4
(State)    (Zip)

2. For identification purposes, provide the last four (4) digits of your social security number in the following boxes: 6 5 3 2

3. Your refund will cover ALL fees for ALL eligible cards that you used for foreign transactions from February 1, 1996 to November 8, 2006. In order to establish your qualification for the Total Estimation Refund, you must provide information for ONE of your eligible cards. You must have been the primary cardholder during the 1996 to 2006 time period above. In the boxes below, please provide the account number and the name of the bank that issued the card for ONE of your eligible cards.

Visa, MasterCard, or Diners Club Account Number

Bank That Issued Card
C I T I G R O U P

4. Consider any trips that you took outside the United States from February 1, 1996 to November 8, 2006. For those trips, add up the total number of days that you spent outside of the U.S. Please enter your estimate of the total number of days outside of the U.S.:

2 3   Estimated Total Number of Days Outside of the U.S. From February 1, 1996 to November 8, 2006

5. Most travel has a major purpose: business, visiting friends or relatives, or leisure/vacation. For your total estimated foreign travel days from February 1, 1996 to November 8, 2006, how often did you travel for each of those purposes? Please check one box for each travel purpose.

|                             | Never | Rarely | Sometimes | Often | Mostly |
|-----------------------------|-------|--------|-----------|-------|--------|
| Traveling on business       | X     |        |           |       |        |
| Visiting friends or relatives |     |        | X         |       |        |
| Vacation or leisure         |       |        |           | X     |        |
| Other purpose for travel    | X     |        |           |       |        |

6. Please date and sign below:

I certify that the information I have provided on this claim is true and correct to the best of my knowledge, and that this is the only claim form that I have submitted. I understand that I will receive only **ONE** payment from this settlement.

Date: 2-13-08    Signature: ▶

7. Refund requests must be submitted by May 30, 2008. You may submit your application online at **www.ccfsettlement.com** or mail your completed form to:

Settlement Administrator
P.O. Box 290

Exh. B